# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| INNA V. WHITE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| MARK J. WHITE ) | JURY TRIAL DEMANDED |
| 1705 West Wind Way ) | |
| McLean, Virginia 22102 ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff Inna White brings this action against her ex-husband, Mark J. White, for unlawfully accessing her private communications and photos in violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712, and for spreading false information about her in an effort to portray her as an unfit mother. The parties' two teenage children have been in Ms. White's custody since 2011. Mr. White recently decided that he would prefer the children to live with him. In a misguided effort to influence the state court to modify its prior custody award, Mr. White has resorted to hacking into Ms. White's personal computer files and defaming her character with false stories of "sex parties" and child abuse. His conduct violates Ms. White's privacy rights under the SCA and is defamatory under Virginia law.

## Parties

1. Plaintiff Inna V. White ("Inna") is, and at all times relevant hereto was, a citizen and resident of the Commonwealth of Virginia. She lives in Herndon with the parties two children, "Son" and "Daughter,"[1] and her significant other of the past 16 months—Lloyd Davis—with whom she bought the house she lives in.

2. Defendant Mark J. White ("Mark") is, and at all times relevant hereto was, a citizen and resident of the Commonwealth of Virginia. He lives alone in McLean. Mark works for the Department of Homeland Security as a computer and cybersecurity expert.

## Jurisdiction and Venue

3. The Court has personal jurisdiction over Mr. White because he resides in this judicial district.

4. The Court has subject-matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because Count I arises under the Stored Communications Act, a federal statutory scheme found at 18 U.S.C. §§ 2701–2712.

---

[1] The names of the minor children are being withheld pursuant to Fed. R. Civ. P. 5.2(a).

2

5. The Court has supplemental jurisdiction over Count II (Defamation) pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C § 1391(a) in that a substantial part of the events giving rise to the claims occurred in this judicial district.

**Facts**

7. Inna and Mark divorced in November 2011 after approximately nine years of marriage.

8. Pursuant to an agreement of the parties, the Circuit Court of Fairfax County, Virginia, awarded custody of the parties' two children, Son and Daughter, to Inna.

9. In 2014, Daughter became 9 years old and Mark gave her an iMac desktop computer. Daughter was not interested in the computer so Inna became its sole and primary user.

10. Using the iMac computer, Inna set up an Apple "iCloud" account to backup and store electronic files such as photographs, emails, texts, and documents.

11. Apple iCloud is an electronic storage facility that stores photos and other electronic files and makes them accessible from any Apple device associated with a particular "Apple ID."

12. Inna never shared her Apple ID or iCloud account with Mark, and never shared any electronic folders with him. Mark never had actual or implied authority to view or access the contents of her iCloud account.

13. The iCloud service stores files in "the cloud"—remote servers housed in data centers in various locations around the world.

14. Inna connected her Apple iPhone to her iCloud account, after which time she was able to view and access her iCloud-connected files from all of her connected devices (which at the time consisted of her iMac and iPhone).

15. Several years after the divorce, Inna entered into a new relationship with "Scott." At some point in 2015, Inna took a photo of herself (*i.e.*, a "selfie") in a state of partial undress, and shared the photo with her boyfriend via private text message.

16. Over the course of their relationship, Inna shared intimate photos of herself with Scott on several occasions. These photos (hereinafter, the "Private Photos") were not intended to be viewed by anyone outside of their relationship.

17. As the iCloud technology was new and unfamiliar to her at the time, it did not occur to Inna at the time she took and shared the Private Photos that copies of the images were being backed up and stored on iCloud servers, thus making the images available across any/all of the electronic devices connected to her Apple account.

18. In or around August 2016, Inna commented to Mark that she would like to give the iMac desktop computer to Son because he expressed an interest in it. The

4

computer was in Inna's apartment but in light of Mark's expertise with computers, she asked Mark to help Son set it up.

19. In February 2017, Mark went to Inna's apartment to pick up Son while Inna and Daughter were not there. Mark took this opportunity to go inside Inna's apartment and take the iMac desktop computer to his apartment without Inna's consent. On information and belief, this computer was still associated with—and logged in to—Inna's iCloud account at the time Mark removed the computer from Inna's home.

20. On information and belief, Mark accessed the iMac desktop computer and/or Son's iPhone, and after snooping through one or both electronic devices, intentionally and maliciously gained unauthorized access to Inna's iCloud account.

21. Alternatively, Mark intentionally and maliciously gained unauthorized access to Inna's iCloud account by using his computer skills to hack into her account.

22. Mark knew at the time he accessed Inna's iCloud account that he did not have express or implied authority to do so.

23. Upon gaining access to Inna's iCloud account, he located copies of Inna's Private Photos that she had intended to be seen only by her boyfriend.

24. In October 2016, Mark shared one or more Private Photos with one or more third parties.

25. Inna and Scott eventually ended their relationship. Inna met her current significant other, Lloyd Davis, in November 2016.

26. Inna and Lloyd purchased a house together in July 2017.

27. When Inna's ex-husband Mark learned that Inna and Lloyd had purchased a home together, he began harassing Inna in a series of offensive and threatening text messages.

28. On July 8, 2017, Mark texted Inna and told her that her iCloud account had been "leaking."

29. On August 30, 2017, Mark texted Inna and asked, "Do you want to see conversations about your wanting to munch on Indian pussy?" In other text messages sent that day, Mark referred to "pictures of your private parts" and told Inna, "Your iCloud buried you."

30. On information and belief, in an effort to estrange the parties' teenage son from his mother, Mark told Son that (a) there were photographs of his mother's "pussy" that could be viewed from his iPhone; (b) that Inna is a "sex pervert", and (c) that Inna and/or Lloyd engage in group sex with Indian women.

31. Son and Daughter spent the weekend of October 28–29, 2017 with Mark.

32. On information and belief, Mark hatched a plan that weekend that he hoped would cause the state court to modify its prior child-custody order and allow his children to live with him full time. In furtherance of that plan, he instructed or

6

otherwise caused Son to write a letter to his school falsely accusing his mother of engaging in "sex parties" and abusing him and his sister sexually.

33. On October 30, 2017, the Monday immediately after the weekend Son spent with Mark, Son approached his school counselor and presented her with the letter he had written, on information and belief, the preceding weekend with his father.

34. The letter (hereinafter, the "Defamatory Letter") stated, among other things, that Inna and Lloyd "engage in sex parties with other couples," presumably in the home in which Son and Daughter were living with their mother. This statement is blatantly false, as Inna and Lloyd enjoy a monogamous relationship and always have.

35. The Defamatory Letter also claimed falsely that Son's mother, Inna, is a "sexual deviant" who "touches me inappropriately" and "touches my sister inappropriately." As Mark is well aware, Inna has never touched her children in a sexual way and would never do so.

36. "Rather than ask me questions," the Defamatory Letter concluded, "get me out of my mother's home before I run away."

37. Understandably alarmed, the school contacted the police. A police officer met with Son privately to ask him about the accusations in the Defamatory Letter and to seek further explanation and elaboration. Son immediately recanted his story, resulting in the officer indicating in his report that the accusations in the Defamatory Letter were "unfounded."

7

38. Undeterred, Mark forwarded the Defamatory Letter to one or more third parties, pretending to be concerned about the welfare of his children, when in reality (on information and belief) he had orchestrated the false accusations as part of a scheme to ruin his ex-wife's reputation and bolster his argument to the family-court judge that it would be in the children's best interests to live with him rather than with Inna.

39. On November 3, 2017, Mark filed an "emergency" motion to modify child custody, purportedly based on the Defamatory Letter Son had given to his school counselor, despite the fact the police officer who interviewed Son found the allegations unfounded.

40. On or about November 3, 2017, Daughter informed Inna and Lloyd that Mark had participated in the drafting of the Defamatory Letter.

## Count I – Stored Communications Act

41. Inna repeats and realleges the allegations contained in paragraphs 1 through 40, inclusive, as if fully set forth herein.

42. Under the Stored Communications Act ("SCA"), it is unlawful to

    (1) intentionally access[] without authorization a facility through which an electronic communication service is provided; or

    (2) intentionally exceed[] an authorization to access that facility; and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system.

*See* 18 U.S.C. § 2701(a).

43. Apple iCloud is a cloud-based photo-and-document storage facility and email management program. As such, it is a "facility" within the meaning of the SCA through which electronic communication service is provided.

44. Mark violated the SCA by intentionally accessing and obtaining copies of Inna's Private Photos and other electronic communication by gaining unauthorized access to Inna's iCloud account, where the Private Photos and other personal communication documents were in electronic storage.

45. In the alternative, he intentionally exceeded any authorization he might have had by snooping in various folders and sharing the Private Photos and other documents he found with third parties.

46. Mark's invasion of Inna's privacy and his unauthorized access to her private iCloud account was willful and intentional.

47. As a result of Mark's willful and intentional violations of the SCA, Inna is entitled to all appropriate damages and remedies under the statute, including but not limited to actual damages, punitive damages, and attorney's fees pursuant to 18 U.S.C. § 2707(c).

## Count II – Defamation

48. Inna repeats and realleges the allegations contained in paragraphs 1 through 47, inclusive, as if fully set forth herein.

49. The Defamatory Letter, written by Son as an agent of Mark and/or at Mark's instruction, was published to Son's school counselor and other third parties.

50. The Defamatory Letter includes the following statements (hereinafter the "Defamatory Statements"), in reference to Inna White:

- "My mother is a sexual deviant who touches me innapropriately [sic]"
- "She touches my sister innapropriately [sic]"
- "Lloyd and my mother engage in sex parties with other couples."

51. The Defamatory Statements are of and concerning Inna.

52. The Defamatory Statements are false.

53. The Defamatory Statements are defamatory in nature in that they tend so to harm Inna's reputation as to lower her in the estimation of the community and to deter third persons from associating or dealing with her.

54. The Defamatory Statements have thrown contumely, shame, and disgrace upon Inna and tend to hold her up to scorn, ridicule, and contempt.

55. The Defamatory Statements have caused (and continue to cause) severe harm to Inna's reputation.

56. Mark knew that the Defamatory Statements were false, yet he, acting through his son, published them willfully, maliciously, and in conscious disregard for Inna's rights and reputation.

57. Alternatively, even if Mark actually believed the Defamatory Statements to be true, then he lacked a reasonable basis for such belief, and/or he acted negligently in failing to determine the facts upon which the Defamatory Statements were based.

58. The Defamatory Statements falsely attribute to Inna the commission of a criminal offense involving moral turpitude; namely, the criminal sexual assault of a child. *See* Va. Code § 18.2-61 *et seq*. Son was just 14 years old at the time he submitted the Defamatory Letter to his counselor. Sexual abuse of a child under 15 is punishable under Va. Code § 18.2-67.4:2. Accordingly, Mark is liable for defamation per se.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that the Court grant her relief as follows: (a) compensatory damages in the amount of $100,000.00 for humiliation and embarrassment caused by the sharing of her Private Photos; (b) compensatory damages in the amount of $100,000.00 for injury to reputation, humiliation, and embarrassment caused by the false allegations in the Defamatory Letter (*i.e.*, the Defamatory Statements); (c) punitive damages in the amount of $350,000.00; (d) an award of the costs of this action, together with reasonable attorneys' fees pursuant to 18 U.S.C. § 2707(c); and (e) for such other relief as the Court deems just and equitable.

**TRIAL BY JURY IS DEMANDED**.

Dated: March 19, 2018

                        Respectfully submitted,

                        _____/s/_____

                        Lee E. Berlik (VSB# 39609)
                        BERLIKLAW, LLC
                        1818 Library Street, Suite 500
                        Reston, Virginia  20190
                        Tel: (703) 722-0588
                        LBerlik@berliklaw.com
                            *Counsel for Plaintiff*

Case 1:18-cv-00299-AJT-IDD Document 188 (Court only) Filed 03/19/18/19 Page 12 of 12 PageID# 7329