IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| INNA V. WHITE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-00299 |
| | ) | (AJT/IDD) |
| MARK J. WHITE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Plaintiff Inna White's Opposition**
**To Defendant's Motion to Dismiss**

Plaintiff Inna White ("Inna") opposes the Motion to Dismiss filed by Defendant Mark White ("Mark"). The Court should deny the Motion because the allegations in the Complaint sufficiently set forth valid claims for both violation of the Stored Communications Act ("SCA") and common-law defamation.

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *See* [Bell Atlantic Corp. v. Twombly](), 550 U.S. 544, 555 (2007). The United

States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570. The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility requirement "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove the alleged claim. Twombly, 550 U.S. at 556.

Because a 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quotations omitted).

## Argument

I. **The Allegations of Count I Are Sufficient to State a Claim for Violation of the Stored Communication Act.**

The Stored Communications Act ("SCA") establishes a criminal offense for whoever "intentionally accesses without authorization a facility through which an

2

electronic communication service is provided" or "intentionally exceeds an authorization to access that facility," and by doing so "obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). The SCA also creates a civil cause of action, in which the plaintiff may obtain damages plus reasonable attorneys' fees and other costs. 18 U.S.C. § 2707(b). Inna has alleged plausible facts in her Complaint (which must be taken as true at this stage) that Mark intentionally accessed her private Apple iCloud account, without her knowledge or permission, and thereby acquired copies of her private photographs while they were in electronic storage in "the cloud." (See Compl. ¶ 44). These allegations are sufficient to state a private right of action under the SCA.

### A. The photographs at issue were in "electronic storage" within the meaning of the statute.

The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). When Mark gained unauthorized access to Inna's private photographs,[1] the files were in

---

[1] The SCA's definition of "electronic communication" includes the "transfer of...images." *See* 18 U.S.C. § 2510(12). Photographs in electronic storage thus fall with the SCA's protections. *See* Navarro v. Verizon Wireless, L.L.C., 2013 WL 275977 at *3 (E.D. La. Jan. 24, 2013) (suggesting that SCA would apply to photographs stored in the "cloud").

electronic storage in Apple iCloud, a facility through which electronic communication service is provided. (Compl. ¶¶ 43–44). Mark does not dispute that photographs stored in iCloud would meet the definition of electronic storage. He argues, however, that his son's iPhone is not a "facility" within the meaning of the SCA and that photos stored on an iPhone are not in "electronic storage" within the meaning of the SCA.

This case is not about Mark looking at photos stored on a phone; it's about him accessing a web-based server to locate and obtain Inna's personal and private photos while they were residing in electronic storage. The "facility" that Mark accessed in violation of the SCA was Inna's web-based iCloud account, not an iPhone or other personal device. *See* [Freedom Banc Mortg. Servs., Inc. v. O'Harra](), No. 2:11-CV-01073, 2012 WL 3862209 at *9 (S.D. Ohio Sept. 5, 2012) (holding that "the relevant 'facilities' that the SCA is designed to protect are not computers that enable the use of an electronic communication service, but instead are facilities that are operated by electronic communication service providers and used to store and maintain electronic storage"). It is immaterial what computer, smartphone, or other personal device Mark may have used to access the iCloud server.

In support of his position that communications on a cell phone are not in "electronic storage," Mark cites [Sunbelt Rentals, Inc. v. Victor](), 43 F. Supp. 3d 1026 (N.D. Cal. 2014). In that case, the court granted a 12(b)(6) motion to dismiss because the communications at issue were text messages sent to a cell phone and, as Mark argues in

4

his brief, "text messages and photographs stored on the device itself [do] not fall within the definition of electronic storage." (See Mem. Supp. Mot. Dismiss at 5). In this case, by contrast, the communications consist of photographs stored in Apple iCloud, a "cloud-based photo-and-document storage facility and email management program." (Compl. ¶ 43). Another distinguishing feature of *Sunbelt Rentals* is that in that case, text messages were sent to a phone, unsolicited. Here, by contrast, the allegations are that Mark took affirmative steps to access Inna's Private Photos by viewing them in the cloud.

Mark also cites the case of Rocket Real Estate, LLC v. Maestres, 2017 U.S. Dist. LEXIS 55179 (S.D. Fla. Apr. 10, 2017), for the proposition that a cell phone is not a "facility." Absent from Mark's brief, however, is the full holding of that case. In *Rocket Real Estate*, the defendant had used a cell phone to access the plaintiff's private Google Gmail account. In response to the defendant's argument that the SCA did not apply because a cell phone is not a "facility" as defined therein, the court stated, "this is a correct statement of law, *to an extent*." Rocket Real Estate, 2017 WL 4303783 at *6 (emphasis added). The court proceeded to observe that while no apparent consensus has been reached among federal courts faced with the issue, several courts have held that "although a cell phone itself is not a 'facility,' accessing emails that are stored on a web-based system such as Gmail or Yahoo *does violate the SCA*." *Id.* (emphasis added).

The Western District of Virginia is one of those courts. In Hoofnagle v. Smyth-Wythe Airport Comm'n, No. 1:15CV00008, 2016 WL 3014702 (W.D. Va. May 24, 2016),

the court held that unauthorized access to the plaintiff's private Yahoo! web-based email account would be a violation of the SCA and, accordingly, denied the defendants' motion for summary judgment. *See* [Hoofnagle](#) at *9–10 (finding emails residing in Yahoo!'s servers to qualify as "electronic storage" under 18 U.S.C. § 2510 (17)); *see also* [Hamilton Grp. Funding, Inc. v. Basel](#), No. 16-61145-CIV, 2018 WL 1788161 at *11 (S.D. Fla. Apr. 12, 2018) (finding, based on 11th Circuit precedent, that "Microsoft 365, a cloud-based service, through which emails are sent and received, and which was the system Plaintiff used, 'is a facility through which an electronic communication service is provided,' for the purposes of the SCA").

In short, for purposes of evaluating SCA liability, the pertinent "facility" through which an electronic communication service is provided is the web-based server on which the files are stored (not the phone or other device used to access the server), and photographs and other communications stored on such servers are in "electronic storage" within the meaning of the statute. Therefore, Inna's Private Photos, which had been backed up and stored in her web-based iCloud account, were in electronic storage at the time they were accessed.

> **B.  The Complaint sufficiently alleges that Mark obtained the Private Photos intentionally and without authorization.**

Mark argues that even if he did acquire Inna's Private Photos by accessing them in iCloud, Inna has only herself to blame because she enabled Mark to snoop through her personal files by neglecting to log her computer out of iCloud prior to allowing the

parties' son to use the computer. By essentially "handing him the keys" to her personal files, his argument goes, she implicitly authorized him to view and copy any of her personal photos and files that he wished. The SCA, however, imposes liability where electronic files are accessed "without authorization," regardless of whether the plaintiff may have inadvertently enabled the wrongful conduct.

The facts of Lazette v. Kulmatycki, 949 F. Supp. 2d 748 (N.D. Ohio 2013) are similar in key respects to those of the case at bar. In *Lazette*, a Verizon Wireless employee was issued a Blackberry smartphone and told she was welcome to use it to access her personal email. During her employment, she used the company-issued phone to access her personal Google Gmail account. At the end of her employment, she turned in the phone, but forgot to log out of her personal Gmail account, inadvertently enabling her former employer to log in to her Gmail account and view its contents. She alleged in her complaint that her former supervisor read thousands of her private email messages on the device without her knowledge or authorization, and that this conduct violated the SCA. The court agreed with her and denied (in material part)[2] the employer's motion to dismiss. Lazette, 949 F. Supp. 2d at 759.

---

[2] The *Lazette* court, sitting in the Northern District of Ohio, interpreted the SCA as applying only to "unopened" communications. *See Lazette*, 949 F. Supp. 2d at 758–59. Virginia federal courts, on the other hand, do not draw a distinction between "opened" and "unopened" communications for purposes of evaluating SCA liability. *See* Hoofnagle v. Smyth-Wythe Airport Comm'n, No. 1:15CV00008, 2016 WL 3014702 at *10 (W.D. Va. May 24, 2016) ("As a practical matter, for the purposes of establishing a claim

The defendants in *Lazette* made all the same arguments Mark is making here: that the phone was not a "facility," that the SCA is designed to apply only to "high tech" criminals such as computer hackers, and that accessing the files in question was implicitly authorized by the plaintiff's negligence in failing to log out of her personal account. The court rejected these arguments one by one.[3] With respect to the "implied authorization" argument, the court observed, "[D]efendants, in effect, contend that plaintiff's negligence left her e-mail door open for [her former supervisor] to enter and roam around in for as long and as much as he desired." *Id.* at 757. The court held that the plaintiff's failure to log out of her Gmail account *did not* give her employer the right to go rummaging through her private communications:

> This is an unacceptable reading of § 2701(a)(1), which prohibits "access without authorization".... Negligence is…not the same as approval, much less authorization. There is a difference between someone who fails to leave the door locked when going out and one who leaves it open knowing someone [will] be stopping by.
>
> Whether viewed through the lens of negligence or even of implied consent, there is no merit to defendants' attempt to shift the focus from [the employer]'s actions to plaintiff's

---

under the SCA, I do not think it makes any difference whether an email stored on an internet service provider's server has been opened or not.")

[3] The court also rejected the defendant's suggestion—just as Mark is suggesting here—that ownership of the device used to access the cloud should determine whether files were accessed with authorization. *Lazette*, 949 F. Supp. 2d at 755 (finding device ownership irrelevant to the issue of authorization).

8

> passive and ignorant failure to make certain that the blackberry could not access her future e-mail.

*Id.* Thus, even if Inna might have been more careful to log out of her iCloud account before allowing any other family members access to the iMac desktop on which she created the account, her failure to do so cannot be interpreted as a granting of authority to her ex-husband to access the files stored therein.

As alleged in the Complaint, Mark accessed Inna's iCloud account, without her permission, and explored her personal files, ultimately locating her Private Photos. (Compl. ¶¶ 20–23). He later gloated over his acquisition of the photos and taunted Inna, texting her that "your iCloud buried you." (Compl. ¶ 29). This activity violates the SCA and is actionable under 18 U.S.C. § 2707(b).

## II. The Allegations of Count II Are Sufficient to State a Defamation Claim Against Mark Because He Instructed His Son to Write the Defamatory Letter.

Mark argues that Inna can't state a valid claim for defamation because it was the parties' son, not Mark himself, who put pen to paper to write the Defamatory Letter and publish it to school officials. This argument fails to take into account well-established principles of tort liability in cases involving principals and their agents. The Complaint alleges that Mark was the driving force behind the Defamatory Letter; that

he told his son what to write and what to do with the letter once it was written.[4] (See Compl. ¶¶ 32–33, 38, 40). Under the circumstances present here, Mark is liable for defamation to the same degree as if he had written the letter himself. Mark cannot do indirectly what he is prohibited by law from doing directly.

The elements of defamation under Virginia law are "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 575 (2005). "To be actionable, the statement must be both false and defamatory." *Id.* Defamatory words are those "tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Schaecher v. Bouffault, 290 Va. 83, 91-92 (2015). The publication element simply calls for a communication to be made to a third party. *See* Bezu v. Bank of Am., 146 F. Supp. 3d 787, 792 (E.D. Va. 2015) (holding that "[p]ublication requires proof that a defendant communicated the actionable statement to a third party, without a privilege to do so.") To prove publication, it is "sufficient to show that, when the defendant addressed the defamatory words to the plaintiff, another person was present,

---

[4] In considering a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. Kensington Volunteer Fire Dep't, 684 F.3d at 467. The Complaint here alleges that Mark instructed or otherwise caused his son to "write a letter to his school" containing various defamatory accusations, all in connection with his plan to destroy Inna's reputation and influence a state court's child-custody ruling. (Compl. ¶ 32). A fair implication from these allegations is that the parties' son acted as Mark's agent not only in drafting the letter, but also in delivering the letter to the school.

heard the words spoken, and understood the statement as referring to the plaintiff." Dragulescu v. Virginia Union Univ., 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (citing Food Lion, Inc. v. Melton, 250 Va. 144, 150, 458 S.E.2d 580 (1995)).

Vicarious liability principles apply to defamation actions just as they do in tort law generally: the principal is normally liable for the tortious conduct of his agent. *See, e.g.*, Mann v. Heckler & Koch Def., Inc., No. 1:08cv611 (JCC), 2008 WL 4551104 at *8 (E.D. Va. Oct. 7, 2008) (denying motion to dismiss defamation claim on basis that employer could be vicariously liable for employee's defamatory statement); Fuste v. Riverside Healthcare Ass'n, Inc., 265 Va. 127, 134 (2003) (recognizing that defamation liability may be founded upon statements made by an authorized agent); *see also* Restatement (Second) Torts § 577 cmt. f ("One is liable for the publication of defamation by a third person whom as his servant, agent or otherwise he directs or procures to publish defamatory matter.")

Agency is defined in Virginia as "a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 384 (2002) (citations omitted). "In any master-servant analysis, be it in the area of tort liability, worker's compensation, or unemployment compensation, the power of control is the determining factor in ascertaining the parties' status." Virginia Employment Comm'n v.

A.I.M. Corp., 225 Va. 338, 347 (1983). "The potential power of control, not the actual exercise of control, is the important element." *Id.*

Parental liability for the tortious conduct of a child has been found to exist where the facts demonstrated the existence of an agency relationship. *See* Thomas v. Wingold, 206 Va. 967, 973 (1966) (affirming jury verdict against mother due to finding she was vicariously liable for the negligent act of her son; an agency relationship was established in that the son's conduct occurred in the course of following his mother's instructions); *see also* Bell v. Hudgins, 232 Va. 491, 493 (1987) (noting general rule of nonliability of a parent for his child's tortious conduct absent a principal-agent relationship). An agency relationship may be inferred from the conduct of the parties and from the surrounding facts and circumstances. Drake v. Livesay, 231 Va. 117, 121 (1986).

It is true that the Complaint alleges that it was the parties' son who physically picked up a writing instrument and wrote the Defamatory Letter. (Compl. ¶¶ 32–33). The Complaint also alleges, however, that the child wrote the letter at the express direction of his father, Mark. (*Id.*) Mark "orchestrated the false accusations" made in the Defamatory Letter and "participated" in its drafting. (Compl. ¶¶ 38, 40). Although Inna admits the letter was written in her son's handwriting, she alleges that the child wrote the letter solely "as an agent of Mark," or otherwise "at Mark's instruction." (Compl. ¶ 49). Mark proceeded to publish the letter to school authorities, "acting through his son." (Compl. ¶ 56).

These allegations clearly provide Mark with fair notice of what the defamation claim is and the grounds upon which it rests. *See* Twombly, 550 U.S. at 555. The allegations of the Complaint, which must be taken as true at this stage of the proceedings, are that it was Mark, not his son, who effectively published the Defamatory Letter to school authorities because Mark is the one who caused the false communication to be made to a third party. Mark has the "power of control" over his minor child, and he exercised that power to direct his son's actions. This created an agency relationship between father and son. *See* Virginia Employment Comm'n, 225 Va. at 347 (finding power of control the "determining factor" in an agency relationship).[5] A principal is liable for the tortious conduct of his agent, so the Motion to Dismiss should be denied.

## Conclusion

The Court should deny Defendant Mark White's Motion to Dismiss in its entirety. Inna has alleged sufficient facts in her Complaint to state a plausible claim that Mark accessed her private communications, without authorization, while they were in electronic storage in her iCloud account. Taking these allegations as true, this conduct

---

[5] Mark may dispute that his son acted as his agent, but that argument will have to wait for summary judgment or trial. Whether an agency relationship exists is normally a question of fact. Markdata, Inc. v. Seaside Properties, Inc., 861 F.2d 265 (4th Cir. 1988). As such, it should not be determined on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

violates the SCA. The Complaint also states a valid claim for defamation because even though it was Mark's son who physically wrote the Defamatory Letter, he did so only as an agent acting at the instruction of Mark, his father and principal.

Dated: April 27, 2018

                                                Respectfully submitted,

                                                _____/s/_____
                                                Lee E. Berlik (VSB# 39609)
                                                BERLIKLAW, LLC
                                                1818 Library Street, Suite 500
                                                Reston, Virginia  20190
                                                Tel: (703) 722-0588
                                                LBerlik@berliklaw.com
                                                    *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                                                  /s/
                                        Lee E. Berlik (VSB# 39609)
                                        BERLIKLAW, LLC
                                        1818 Library Street
                                        Suite 500
                                        Reston, Virginia  20190
                                        Tel: (703) 722-0588
                                        LBerlik@berliklaw.com
                                            *Counsel for Plaintiff*